**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS – BOSTON DIVISION**

KNAYYA DOUGLAS DURMUS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DOTHOUSE HEALTH, INC.

Defendant.

**Civil Action No.: 1:25-cv-12072**

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff KNayya Douglas Durmus ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint ("Complaint") against Defendant, DotHouse Health, Inc., ("DotHouse" or "Defendant"), to obtain damages, restitution, and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record.

## I. INTRODUCTION

1. This class action arises out of Defendant's recent data security incident that occurred on, between, or around the date(s) of October 31, 2022 and November 27, 2022, which resulted from a breach (the "Data Breach") of Defendant's computer network systems and

disclosure of Defendant's patients' (collectively, "the putative class members" or "Class Members") personally identifiable information ("PII") and protected health information ("PHI", collectively, the "Private Information") which was possessed by Defendant on Defendant's computer network systems.

2. Defendant DotHouse is a Massachusetts nonprofit corporation,[1] operating as a healthcare organization, working in partnership with Boston Medical Center, offering a variety of care, including, primary; dental; eye; behavioral health; nutrition; cardiology; and acupuncture.

3. In the ordinary course of business, all of Defendant's patients are encouraged and/or obligated to provide their Private Information before they can obtain health care services. The patients, including Plaintiff and Class members, provided their Private Information with the understanding that Defendant would reasonably protect the Private Information.

4. Plaintiff is one of the Defendant's current/former patients who provided Defendant with her Private Information.

5. Defendant obtained, collected and maintained the Plaintiff's and Class Members' Private Information on Defendant's computer network systems, which lacked the adequate and reasonable cyber-security procedures and protocols.

6. The Private Information included, but is not limited to, the Plaintiff's and Class Member's "full name, address, date of birth, medical record number, diagnosis/conditions, medications, other treatment information, and claims information." *See* Notice of Data Breach, attached hereto as Exhibit A.

7. On July 14, 2025, Defendant informed the Commonwealth of Massachusetts,

---

[1]Secretary of the Commonwealth of Massachusetts --available at: https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=tUjd8mkyJQcGKtnYSSr2KCqU1IJQMhOPqsAZ4y1YzuM- (last visited July 21, 2025).

Office of Consumer Affairs and Business Regulation that 185,795 Massachusetts residents' Private Information was compromised in the Data Breach.[2]

8. The Data Breach resulted from vulnerabilities in the computer network system which Defendant created by failing to implement adequate and reasonable cyber-security procedures and protocols. Upon information and belief, cyber-criminals exploited these vulnerabilities in Defendant's computer network, accessed, encrypted, and stole the Private Information held on Defendant's computer network systems which included the Plaintiff's and Class Members' Private Information.

9. Upon information and belief, Defendant was on notice that failure to implement adequate and reasonable cyber-security procedures and protocols would leave the Private Information held on Defendant's computer network systems in a dangerous condition and knew there was a risk that a data security incident would occur causing improper disclosure of Plaintiff's and Class Members' Private Information.

10. To this day the Private Information remains in the hands of the cyber-criminals who perpetrated the Data Breach and has been or is likely to be disclosed on the dark web or to data brokers.

11. Plaintiff brings this class action lawsuit, on behalf of those similarly situated, to address Defendant's inadequate safeguarding of Class Members' Private Information and for failing to provide timely and adequate notice to Plaintiff and other Class Members informing Plaintiff and Class Members of the Data Breach and that the Private Information was subjected to unauthorized access by cyber-criminals and precisely what specific type of information was

---

[2]Commonwealth of Massachusetts, Office of Consumer Affairs and Business Regulation, Data Breach Notification Report available at https://www.mass.gov/doc/data-breach-report-2025/download (last accessed July 21, 2025).

accessed.

12. Plaintiff's and Class Members' identities, physical safety, and financial stability are now at risk because of Defendant's negligent conduct.

13. Further, Plaintiff and Class Members may incur out of pocket costs for protecting themselves from or dealing with the consequences of the Data Breach, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

14. Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed, disclosed, encrypted and taken during the Data Breach.

15. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

16. Accordingly, Plaintiff sues Defendant seeking redress for their unlawful conduct and asserts claims for:

i. negligence,

ii. negligence *per se*,

iii. breach of implied contract,

iv. unjust enrichment;

v. invasion of privacy and

vi. breach of fiduciary duty.

## II. PARTIES

17. Plaintiff KNayya Douglas Durmus at all times mentioned herein is an individual citizen of Massachusetts, residing in the city of Boston.

18. Plaintiff was patient under the name KNayya Duglas Dew but has since gotten married and changed her name to KNayya Douglas Durmus.

19. Defendant DotHouse, is a Massachusetts-based nonprofit corporation with its headquarters and principal place of business at 1353 Dorchester Ave, Dorchester, MA 02122.[3]

20. Defendant can be served through Megan Sonderegger, President, at 61 Alban St. Dorchester, MA 02122; or Michelle Nadow, CEO, at 41 Breakwater Dr. Chelsea, MA, 02150.[4]

## III. JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs and a member of the class is a citizen of a State different from the defendant.[5]

22. This court has personal jurisdiction over Defendant because Defendant conducts business in this District, maintains its principal place of business in this District, and has sufficient minimum contacts with this State.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant's

---

[3]Secretary of the Commonwealth of Massachusetts --available at: https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?sysvalue=tUjd8mkyJQcGKtnYSSr2KCqU1IJQMhOPqsAZ4y1YzuM- (last visited July 21, 2025)

[4] *Id*.

[5] *See Data Breach Notification*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/f6db22d1-7945-48b6-b727-0b134a5b4e38.html *and Data Breach Report 2025,* MASS.GOV, https://www.mass.gov/lists/data-breach-notification-reports and *Data Breach Notice to Consumers*, OFFICE OF THE VERMONT ATTORNEY GENERAL https://ago.vermont.gov/ document/2025-07-14-dothouse-health-data-breach-notice-consumers (last visited July 21, 2025).

principal place of business is in this District and therefore resides in this District and a substantial part of the events or omissions giving rise to the Class's claims also occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. *DEFENDANT'S BUSINESS*

24. Defendant DotHouse is based in Massachusetts and provides healthcare services alongside with Boston Medical Center. DotHouse is a licensed Health Center of the Boston Medical Center and offers a variety of care including primary, dental, eye, behavioral health, nutrition, cardiology, and acupuncture.

25. Plaintiff and Class Members are current and former patients of Defendant.

26. In the ordinary course of business, Defendant's patients are encouraged and/or are mandated to provide the Defendant's (and Plaintiff did provide) Defendant with sensitive, personal, and private information, such as his or her:

a. full name,
b. address,
c. date of birth,
d. medical record number,
e. diagnosis/conditions,
f. medications,
g. other treatment information, and
h. claims information. [6]

27. On information and belief, Defendant stored this Private Information on its computer network system located at its principal place of business in Dorchester, MA.

[6] *See* Notice of Security Breach (Exhibit A).

28. Based on the relationship between the Defendant and Defendant's patients, Defendant became the custodian of the Private Information it generated and collected, and agreed to and undertook certain legal duties to maintain the confidentiality of the Private Information entrusted to it and to ensure that the Defendant's computer network system, containing the Private Information, was in compliance with all applicable laws, regulations and industry standards, including FTC Act, HIPAA.

29. All of Defendant's employees, staff, entities, sites, and locations may share patient information with each other for various purposes, as should be disclosed in a HIPAA compliant privacy notice ("Privacy Policy") that Defendant are required to maintain.

30. Upon information and belief, Defendant's HIPAA Privacy Policy is provided to every patient prior to treatment and upon request.

31. Defendant agreed to and undertook legal duties to maintain the protected health and personal information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws, including the Health Insurance Portability and Accountability Act ("HIPAA").

### *B. The Data Breach*

32. Defendant negligently maintained its computer network system in a condition that failed to meet the industry standards set by the FTC, HIPAA. industry guides, and information technology security recommendations and manufacturers.

33. On July 14, 2025, DotHouse confirmed it notified at least 185,795 people of a data breach that compromised the Private Information provided, including but not limited to, full name, address, date of birth, medical record number, diagnosis/conditions, medications, other treatment

information, and claims information.[7]

34. A Data Breach occurs when unauthorized cyber criminals access a computer network system that has not been adequately and reasonably secured.

35. On or about July 14, 2025, Defendant mailed Plaintiff a "Notice of Data Security Incident"[8] that stated in part:

> What Happened:
>
> On November 28, 2022, DotHouse became aware that certain computer systems in our environment were exhibiting suspicious activity. We promptly took steps to secure our systems and launched and investigation, with the assistance of cybersecurity specialists, to determine the full nature and scope of the event. We also promptly reported the event to federal law enforcement and governmental regulators. Our investigation determined that an unknown actor gained access to certain systems between October 31, 2022 and November 27, 2022, and appeared to have accessed or downloaded certain files stored on certain computer systems during that time. DotHouse's electronic medical records database was not impacted during the event.
>
> Due to limitations in available evidence, we were not able to identify with specificity what information was impacted….
>
> What Information was Involved:
>
> The types of information that was present in the systems and may have been impacted during the event varies by individual and could have included: full name, address, date of birth, medical record number, diagnosis/conditions, medications, other treatment information, and claims information.

36. Plaintiff's notice letter was dated over two year after Defendant discovered the Data Breach and from the actual breach.

37. Within this notice, Defendant failed to state whether it was able to contain or end the cybersecurity threat, leaving victims in fear of their Private Information being leaked to the

---

[7]https://ago.vermont.gov/sites/ago/files/documents/2025-07-14%20DotHouse%20Health%20Data%20Breach%20Notice%20to%20Consumers.pdf (last visited July 21, 2025).
[8] Exhibit A

public or offered for sale to the public by data brokers and whether their Private Information that DotHouse continues to maintain is secure.

38. Defendant also failed to state how the breach itself occurred and precisely what information was impacted.

39. All this information is vital to victims of a data breach due to the sensitivity, importance and value of the Private Information compromised in this specific breach.

40. Plaintiff and Class Members provided Defendant with their Private Information reasonably expectating and belief that Defendant had implied a promise and accepted the responsibility to keep such information confidential and secure from unauthorized access as part of their contract to do business together.

C. ***DATA BREACHES ARE PREVENTABLE***

41. Defendant's data security obligations were particularly important given the substantial increase in Data Breaches in the healthcare industry preceding the date of the breach.

42. In 2023, a record 3,205 data breaches occurred, resulting in around 353,027,892 individuals' information being compromised, a 78% increase from 2022.[9] Of the 2023 recorded data breaches, 809 of them, or 25%, were in the medical or healthcare industry.[10] The 809 reported breaches reported in 2023 exposed nearly 56 million sensitive records, compared to only 343 breaches that exposed just over 28 million sensitive records in 2022.[11] In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past

---

[9] *See* Identity Theft Resource Center, *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last visited July 21, 2025)
[10] *Id*.
[11] *Id*. at 11, Fig.3.

year.[12]

43. Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.

44. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

45. Yet, still, Defendant failed to use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

46. Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

47. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[13]

48. To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of

[12] Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack, Security Magazine* (Nov. 23, 2020), *available at* https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited April 7, 2025).

13 How to Protect Your Networks from RANSOMWARE, at 3, available at: https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited July 21, 2025)

ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via

email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[14]

49. To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**<u>Secure Internet-Facing Assets</u>**

– Apply latest security updates

– Use threat and vulnerability management

– Perform regular audit; remove privileged credentials;

**<u>Thoroughly investigate and remediate alerts</u>**

[14] *Id.* at 3-4.

– Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

– Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

– Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

– Monitor for adversarial activities

– Hunt for brute force attempts

– Monitor for cleanup of Event Logs

– Analyze logon events;

**Harden infrastructure**

– Use Windows Defender Firewall

– Enable tamper protection

– Enable cloud-delivered protection

– Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office[Visual Basic for Applications].[15]

---

[15] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last viewed July 21, 2025).

50. Given that Defendant was storing the Private Information of its current and former patients Defendant could and should have implemented all the above measures to prevent and detect cyberattacks.

51. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the Private Information of, upon information and belief, thousands to tens of thousands of individuals, including that of Plaintiff and Class Members.

***D. Defendant Acquires, Collects & Stores Patients.' Private Information***

52. Defendant's obligations arise because in the ordinary course of business Defendant acquires, collects, and stores a massive amount of Private Information on its current and former patients.

53. In fact, a patient of Defendant has no options other than to give Defendant their Private Information because Defendant requires all patients to entrust it with highly sensitive personal information and protected health information to receive healthcare services.

54. By obtaining, collecting, and using Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

55. Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and would not have entrusted it to Defendant absent a promise to safeguard that information.

56. Upon information and belief, while collecting Private Information from patients, including Plaintiff, Defendant promised to provide confidentiality and adequate security for their

data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

57. Plaintiff and the Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***E. Defendant Fails to Comply with FTC Guidelines***

58. The Federal Trade Commission ("FTC") has promulgated many guides for businesses which show how important it is to implement reasonable data security practices. According to the FTC, the need for data security should shape all business decision-making.

59. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal Private Information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[16]

60. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor incoming traffic for activity suggesting someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[17]

61. The FTC further recommends that companies not maintain PII longer than is

[16] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (2016), *available at* www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited July 21, 2025).

[17] *Id.*

needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

62. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect the Private Information in their possession by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an *unfair act or practice* prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.[emphasis added].

63. Orders resulting from these actions also clarify the measures businesses must take to meet their data security obligations.

64. These FTC enforcement actions include actions against healthcare providers like Defendant. *See, e.g., In the Matter of LabMD, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

65. Defendant failed to properly implement basic data security practices.

66. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

67. Defendant was always fully aware of its obligation to protect the PII and PHI of its patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

## *F. DEFENDANT FAILS TO COMPLY WITH INDUSTRY STANDARDS*

68. As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain.

69. Several best practices have been identified that a minimum should be implemented by healthcare providers like Defendant, including, but not limited to, educating all employees; using strong passwords; creating multi-layer security, including firewalls, antivirus, and anti-malware software; encryption, making data unreadable without a key; using multi-factor authentication; protecting backup data; and limiting which employees can access sensitive data.

70. Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

71. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including, without limitation, PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

72. These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

## G. Defendant fails to comply with HIPAA and other Health industry regulations

73. HIPAA requires covered entities such as Defendant to protect against reasonably anticipated threats to the security of sensitive employee health information.

74. Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

75. U.S. Department of Health and Human Services requires, "[i]f a breach of unsecured protected health information affects *500 or more individuals*, a covered entity must notify the Secretary of the breach without unreasonable delay and in *no case later than 60 calendar days* from the discovery of the breach."[18] Further, if "the number of individuals affected by a breach is uncertain at the time of submission, the covered entity should provide an estimate," and later provide an addendum or correction to HSS.[19]

76. Defendant took over two years before disclosure to HHS or to disclose to Plaintiff and the Class Members any details with which they could take action to try and mitigate the disclosure of their Private Information. As a result, Plaintiff and the Class Members are defenseless against the cybercriminals who possess their Private Information.

77. Defendant had obligations created by HIPAA, contract, industry standards, common law, and representations made to Class Members, to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

78. Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, et seq. These provisions require, among other things, that the

[18] U.S. Department of Health and Human Services, *Submitting Notice of a Breach to the Secretary* (Feb. 27, 2023) https://www.hhs.gov/hipaa/for-professionals/breach-notification/breach-reporting/index.html (last viewed April 7, 2025) (emphasis added).
[19] *Id.*

Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Defendant left unguarded. HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a) (1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

79. A Data Breach such as the one Defendant experienced is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule. See 45 C.F.R. 164.402 (Defining "Breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under [the HIPAA Privacy Rule] which compromises the security or privacy of the protected health information.").

80. Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate it failed to meet standards mandated by HIPAA regulations.

## V. DEFENDANT'S BREACH

81. Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and its data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

- Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;
- Failing to adequately protect patients' Private Information;
- Failing to properly monitor its own data security systems for existing intrusions;
- Failing to ensure that vendors with access to Defendant's protected health

data employed reasonable security procedures;

- Failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);
- Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);
- Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);
- Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);
- Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);
- Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules related to individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);
- Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);
- Failing to train all members of Defendant's workforce effectively on the

policies and procedures about PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

- Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 C.F.R. § 164.304, definition of "encryption").

82. As the result of computer systems needing security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing the ransomware virus, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information.

83. Plaintiff and Class Members now face an increased risk of fraud and identity theft.

### *A. Plaintiff and the Class Members Have and Will Experience Substantial Harm*

84. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

85. The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes. According to experts, one out of four data breach notification recipients become a victim of identity fraud.

86. Because of Defendant's failures to prevent—and to timely detect—the Data

Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. Failing to adequately protect employees' Private Information;

c. Failing to properly monitor its own data security systems for existing intrusions;

d. Failing to ensure that vendors with access to Defendant's protected health data employed reasonable security procedures;

e. Failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

f. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

g. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

h. Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

i. Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

j. Failing to protect against reasonably anticipated uses or disclosures of electronic

PHI that are not permitted under the privacy rules related to individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

k. Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

l. Failing to train all members of Defendant's workforce effectively on the policies and procedures about PHI as necessary and appropriate for the members of its workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b); and/or

m. Failing to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 C.F.R. § 164.304, definition of "encryption").

### *B. DATA BREACHES PUT CONSUMERS AT AN INCREASED RISK OF FRAUD AND IDENTITY THEFT*

87. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

88. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals often post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

89. It can take victims years to spot identity or PII theft, giving criminals plenty of time

to abuse that information for money.

90. One such example of criminals using PII for profit is the development of "Fullz" packages.

91. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

92. The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other members of the proposed Class's stolen PII is being misused, and that such misuse is traceable to the Data Breach.

93. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims, and the numbers are only rising.

94. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good" Defendant did not rapidly

report to Plaintiff and the Class that their PII had been stolen.

95. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

96. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their PII. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

97. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and the Class will need to remain vigilant against unauthorized data use for years or even decades to come.

98. The Federal Trade Commission ("FTC") has also recognized that consumer data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency."[20]

99. The FTC has also issued many guidelines for businesses that highlight the importance of reasonable data security practices. The FTC has noted the need to factor data security into all business decision-making. According to the FTC, data security requires:

[20] Statement of FTC Commissioner Pamela Jones Harbour-Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009).(last visited July 21, 2025)

- encrypting information stored on computer networks;
- retaining payment card information only as long as necessary;
- properly disposing of personal information that is no longer needed;
- limiting administrative access to business systems;
- using industry-tested and accepted methods for securing data;
- monitoring activity on networks to uncover unapproved activity;
- verifying that privacy and security features function properly;
- testing for common vulnerabilities; and
- updating and patching third-party software.

100. According to the FTC, unauthorized PII disclosures ravage consumers' finances, credit history and reputation, and can take time, money and patience to resolve the fallout.[21]

101. The FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

102. Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PHI and PII and take other necessary steps to mitigate

---

[21] *See* Taking Charge, What to Do If Your Identity is Stolen, FTC, at 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen (last visited July 21, 2025 ).

the harm caused by the Data Breach.

103. Plaintiff and Class Members now face an increased risk of fraud and identity theft.

104. Data Breaches such as the one experienced by Defendant's patients are especially problematic because of the disruption they cause to the daily lives of victims affected by the attack.

105. The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[22]

106. The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (possibly an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[23]

107. Identity thieves use stolen personal information such as Social Security numbers for various crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

108. Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give

---

[22] U.S. Government Accountability Office, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), *available at* https://www.gao.gov/new.items/d07737.pdf (last visited July 21, 2025) ("GAO Report").
[23] Federal Trade Commission, *What To Do Right Away* (2024), *available at* https://www.identitytheft.gov/Steps (last visited July 21, 2025).

the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

109. Theft of Private Information is gravely serious. PII/PHI is a valuable property right.[24] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

110. Theft of PHI is also gravely serious: "A thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[25] Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII/PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

111. It must also be noted there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a

---

[24] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[25] *See* Federal Trade Commission, *Medical Identity Theft*, *available at* http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited July 21, 2025).

> result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.
>
> *See* GAO Report, at p. 29.

112. Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

113. There is a strong probability that all the stolen information has been dumped on the black market or will be dumped on the black market, meaning Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts for many years to come.

114. Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[26]

115. PII is particularly valuable because criminals can use it to target victims with frauds and scams. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

116. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for more credit lines.[27]

117. Such fraud may go undetected until debt collection calls commence months, or even years, later. Stolen Social Security Numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[28]

---

[26] Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), *available at* https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited July 21, 2025).
[27] Social Security Administration, *Identity Theft and Your Social Security Number* (2018), *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited July 21, 2025).
[28] *Id* at 4.

118. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

119. It is also hard to change or cancel a stolen Social Security number.

120. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[29]

121. Defendant therefore knew or should have known this and strengthened its data systems accordingly. Defendant was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.

## VI. PLAINTIFF'S EXPERIENCE

122. Plaintiff Knayya Douglas Durmus is and at all times mentioned herein was an individual citizen of Massachusetts, residing in the city of Boston.

123. Plaintiff provided Defendant with her sensitive PII and PHI a to obtain health care services. Plaintiff received notice of the Data Breach around July 14, 2025, informing her that her sensitive information was part of Defendant's Data Breach (Exhibit A).

124. Plaintiff is careful about sharing her sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any

[29] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (February 9, 2015), *available at* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited July 21, 2025).

other unsecured source.

125. Plaintiff stores any documents containing her sensitive Private Information in a safe and secure location or destroys the documents. Moreover, Plaintiff diligently chooses unique usernames and passwords for her sensitive online accounts.

126. Had Plaintiff been aware that Defendant's computer systems were not secure, she would not have entrusted her personal data to Defendant.

127. Because of the Data Breach, Defendant advised Plaintiff to take certain steps to protect her Private Information and otherwise mitigate her damages.

128. Because of the Data Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach and self-monitoring her accounts to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured. This time was spent at Defendant's direction by way of the Data Breach notice where Defendant recommended that Plaintiff mitigate her damages by, among other things, monitoring her accounts for fraudulent activity.

129. Even with the best response, the harm caused to Plaintiff cannot be undone.

130. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and because of the Data Breach. Plaintiff suffered lost time, annoyance, interference, and inconvenience because of the Data Breach and have anxiety and increased concerns for the loss of her privacy.

131. Plaintiff has suffered imminent and impending injury arising from the exacerbated risk of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of criminals.

132. Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches

## VII. PLAINTIFF AND CLASS MEMBERS DAMAGES

133. To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered because of the Data Breach, including, but not limited to, the costs and loss of time they incurred because of the Data Breach. Defendant has only offered inadequate identity monitoring services, despite Plaintiff and Class Members being at risk of identity theft and fraud for the remainder of their lifetimes.

134. The credit monitoring offered to persons whose Private Information was compromised is wholly inadequate as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud. What's more, Defendant places the burden on Plaintiff and Class Members by requiring them to expend time signing up for that service rather than automatically enrolling all victims of this Data Breach.

135. Defendant's credit monitoring advice to Plaintiff and Class Members places the burden on Plaintiff and Class Members, rather than on Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach.

136. Plaintiff and Class Members have been damaged by the compromise and exfiltration of their Private Information in the Data Breach, and by the severe disruption to their lives as a direct and foreseeable consequence of this Data Breach.

137. Plaintiff's Private Information was compromised and exfiltrated by cyber-criminals as a direct and proximate result of the Data Breach.

138. Plaintiff and Class Members were damaged in that their Private Information is in the hands of cyber criminals.

139. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been placed at an actual, present, immediate, and continuing increased risk of harm from fraud and identity theft.

140. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach.

141. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

142. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

143. Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

144. Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Many courts have recognized the propriety of loss of value damages in related cases.

145. Plaintiff and Class Members have spent and will continue to spend significant amounts of time to monitor their financial accounts and records for misuse.

146. Plaintiff and Class Members have suffered or will suffer actual injury as a direct

result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

- Finding fraudulent charges;
- Canceling and reissuing credit and debit cards;
- Purchasing credit monitoring and identity theft prevention;
- Addressing their inability to withdraw funds linked to compromised accounts;
- Taking trips to banks and waiting in line to obtain funds held in limited accounts;
- Placing "freezes" and "alerts" with credit reporting agencies;
- Spending time on the phone with or at a financial institution to dispute fraudulent charges;
- Contacting financial institutions and closing or modifying financial accounts;
- Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;
- Paying late fees and declined payment fees imposed because of failed automatic payments that were tied to compromised cards that had to be cancelled; and
- Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

147. Moreover, Plaintiff and Class Members have an interest in ensuring that their

Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by implementing security measures and safeguards, including, but not limited to, making sure that the storage of data or documents containing personal and financial information is inaccessible online and that access to such data is password protected.

148. Further, because of Defendant's conduct, Plaintiff and Class Members are forced to live with the anxiety that their Private Information —which contains the most intimate details about a person's life—may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

149. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered anxiety, emotional distress, and loss of privacy, and are at an increased risk of future harm.

## VIII. <u>CLASS REPRESENTATION ALLEGATIONS</u>

150. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

151. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

152. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **All persons whose Private Information was compromised because of the Between October 31, 2022 And November 27, 2022 Data Breach (the "Class").**

153. Excluded from the Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys,

successors, heirs, and assigns of Defendant. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

154. Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having an opportunity to conduct discovery.

155. This action satisfies the numerosity, commonality, typicality, and adequacy of requirements under Fed. R. Civ. P. 23.

156. Numerosity. In accordance with Fed. R. Civ. P.23(a)(1), the Members of the Class are so numerous that joinder of all of them is impracticable. The exact number of Class Members is unknown to Plaintiff now, but Defendant has provided notice to the Commonwealth of Massachusetts, Office of Consumer Affairs and Business Regulation, Data Breach Notification Report that the number includes at least 185,795 individuals.[30]

157. Commonality. In satisfaction of Fed. R. Civ. P.23(a)(2), there are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

- Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;
- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
- Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

[30] *See Commonwealth of Massachusetts, Office of Consumer Affairs and Business Regulation, Data Breach Notification Report, supra*

- Whether Defendant's data security systems prior to and during the Data Breach adhered to industry standards;
- Whether Defendant owed a duty to Class Members to safeguard their Private Information;
- Whether Defendant breached its duty to Class Members to safeguard their Private Information;
- Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;
- Whether Plaintiff and Class Members suffered legally cognizable damages from Defendant's misconduct;
- Whether Defendant's conduct was negligent;
- Whether Defendant's conduct was *per se* negligent;
- Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;
- Whether Defendant was unjustly enriched;
- Whether Defendant failed to provide notice of the Data Breach promptly; and
- Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

158. Typicality. Pursuant to Fed. R. Civ. P.23(a)(3) Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, among other things, all Class Members were injured through the common

misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and no defenses are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

159. Adequacy of Representation. As Fed. R. Civ. P.23(a)(4) requires Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

160. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

161. Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy.

162. This class action is maintainable under Fed. R. Civ. P.23 because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action presents

far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

163. This class action is maintainable under Fed. R. Civ. P.23 because Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

164. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## IX. CAUSES OF ACTION

### FIRST COUNT

### NEGLIGENCE

### (On Behalf of Plaintiff and All Class Members)

165. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

166. Defendant required Plaintiff and Class Members to submit non-public personal information as a condition of receiving treatment.

167. By collecting and storing this data in Defendant's computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach.

168. Defendant owed a duty of care to Plaintiff and Class Members to provide data

security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

169. Defendant's duty of care to use reasonable security measures arose because of the special relationship that existed between Defendant and its patients, which is recognized by laws and regulations including, but not limited to, HIPAA, as well as common law. Defendant could ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

170. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all the healthcare information at issue constitutes "protected health information" within the meaning of HIPAA.

171. In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

172. Defendant's duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

173. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and

omissions committed by Defendant include, but are not limited to, the following:

- Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;
- Failing to adequately monitor the security of its networks and systems;
- Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;
- Allowing unauthorized access to Class Members' Private Information;
- Failing to detect timely that Class Members' Private Information had been compromised;
- Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and
- Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

174. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

175. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

176. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

177. Defendant's negligent conduct is ongoing, in that they still hold the Private

Information of Plaintiff and Class Members in an unsafe and unsecure manner.

178. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class Members.

**SECOND COUNT**

**NEGLIGENCE PER SE**

**(On Behalf of Plaintiff and All Class Members)**

179. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

180. Under the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

181. Under HIPAA, 42 U.S.C. § 1302d, et seq., Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

182. Under HIPAA, Defendant had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." See definition of encryption at 45 C.F.R. § 164.304.

183. Defendant breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

184. Defendant breached its duties to Plaintiff and Class Members under Massachusetts law by failing to develop and implement policies and procedures necessary to protect Plaintiff's and Class Members' PHI.

185. Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

186. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

187. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that by failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

188. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**THIRD COUNT**

**BREACH OF IMPLIED CONTRACT**

**(On Behalf of Plaintiff and All Class Members)**

189. Plaintiff re-alleges and incorporate the above allegations as if fully set forth herein.

190. When Plaintiff and Class Members provided their Private Information to Defendant in exchange for receiving treatment, they entered implied contracts with Defendant under which Defendant agreed to reasonably protect such information.

191. Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members

accepted Defendant's offers and provided their Private Information to Defendant.

192. In entering such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant federal and state laws and regulations, including HIPAA, and adhered to industry standards.

193. Plaintiff and Class Members paid money to Defendant or provided labor to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

194. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

195. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that they adopted reasonable data security measures.

196. Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

197. Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

198. As a direct and proximate result of Defendant's breach of the implied contracts, Class Members sustained damages as alleged here, including the loss of the benefit of the bargain.

199. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered because of the Data Breach.

200. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit

to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**FOURTH COUNT**

**UNJUST ENRICHMENT**

**(On Behalf of Plaintiff and All Class Members)**

201. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

202. Plaintiff brings this claim individually and on behalf of all Class Members. This count is pled in the alternative to the breach of implied contract count above.

203. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

204. As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the portion of each payment made that is allocated to data security is known to Defendant.

205. Plaintiff and Class Members conferred a monetary benefit on Defendant. Defendant's acceptance and storage of Plaintiff's and the other Class members' Private Information created a fiduciary relationship between Defendant on the one hand, and Plaintiff and the other Class members, on the other hand. In light of this relationship, Defendant must act primarily for the benefit of its employees, clients, patients, and/or customers, which includes safeguarding and protecting Plaintiff's and the other Class members' Private Information.

206. Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

207. Defendant enriched itself by saving the costs Defendant reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Rather than providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by using cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security.

208. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

209. Defendant failed to secure Plaintiff's and Class Members' Private Information and thus did not provide full compensation for the benefit Plaintiff and Class Members provided.

210. Defendant acquired the Private Information through inequitable means in that they failed to disclose the inadequate security practices alleged.

211. If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

212. Plaintiff and Class Members have no adequate remedy at law.

213. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

a. actual identity theft;

b. the loss of the opportunity of how their Private Information is used;

c. the compromise, publication, and/or theft of their Private Information;

d. out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information;

e. lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;

f. the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and

g. future costs in terms of time, effort, and money to be expended to prevent, detect, contest, and repair the effect of the Private Information compromised because of the Data Breach for the rest of the lives of Plaintiff and Class Members.

214. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

215. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

**FIFTH COUNT**

**INVASION OF PRIVACY**

**(On Behalf of Plaintiff and All Class Members)**

216. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

217. Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

218. Defendant owed a duty to Plaintiff and Class Members to keep their PII and PHI confidential.

219. The State of Massachusetts recognizes the tort of Invasion of Privacy. Under M.G.L c.214 § 1B, "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."

220. A plaintiff bringing an invasion of privacy claim in Massachusetts under M.G.L. c. 214 § 1B must show that there was: (1) a gathering and dissemination of facts of a private nature that (2) resulted in an unreasonable, substantial or serious interference with her privacy.

221. The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII and PHI is highly offensive to a reasonable person. It constitutes an unreasonable, substantial or serious invasion of privacy both by disclosure of nonpublic facts and intrusion upon seclusion.

222. The subsequent publication of the stolen PII on the Dark Web also constitutes an unreasonable, substantial or serious invasion of privacy.

223. The intrusion was into a place or thing which was private and entitled to be private.

Plaintiff and the Class Members disclosed their sensitive and confidential information to Defendant as part of seeking Defendant's services, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

224. The Data Breach constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

225. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

226. Defendant acted with a knowing state of mind when it failed to notify Plaintiff's and the Class members in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

227. Defendant had notice and knew or should have known that its inadequate cybersecurity practices would cause injury to Plaintiff's and the Class Member.

228. Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII and PHI, Defendant had Notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

229. As a proximate result of Defendant's acts and omissions, the PII and PHI of Plaintiff and the Class members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

230. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII and PHI is still maintained by Defendant with their inadequate

cybersecurity system and policies.

231. Plaintiff and Class members have no adequate remedy at law for the injuries relating to Defendant's continued possession of the PII and PHI. A judgment for monetary damages will not end Defendant's inability to safeguard the PII and PHI of Plaintiff and the Class.

232. Plaintiff and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII and PHI.

233. Plaintiff and Class Members seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**SIXTH COUNT**

**BREACH OF FIDUCIARY DUTY**

**(On Behalf of Plaintiff and All Class Members)**

234. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

235. Defendant became guardian of Plaintiff's and Class Members' Private Information, creating a special relationship between Defendant and Plaintiff and Class Members.

236. As such, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Private Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

237. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with its patients, in particular, to keep secure their Private Information.

238. Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff and Class Members' Private Information.

239. Defendant breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

240. Defendant breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

241. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to:

- actual identity theft;
- the compromise, publication, and/or theft of their Private Information;
- out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information;
- lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft;
- the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession;
- future costs in terms of time, effort, and money that will be expended as

result of the Data Breach for the rest of the lives of Plaintiff and Class Members; and

- the diminished value of Defendant's services they received.

242. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class described above seek the following relief:

a. For an Order certifying this action as a class action, defining the Class as requested herein, appointing Plaintiff and their counsel to represent the Class, and finding that Plaintiff are proper representatives of the Class requested herein;

b. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein relating to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c. For equitable relief compelling Defendant to use appropriate methods and policies related to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained because of Defendant's wrongful conduct;

e. Ordering Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

f. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g. For an award of punitive damages, as allowable by law;

h. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i. Pre- and post-judgment interest on any amounts awarded; and

j. Any other relief that this court may deem just and proper.

Dated: July 23, 2025

Respectfully submitted,

*_/s/ John P. Kristensen_*
John P. Kristensen, BBO#712688
**KRISTENSEN LAW GROUP**
53 State Street, Ste. 500
Boston, MA 02109
Telephone: 617-913-0363
john@kristensenlaw.com

Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
4200 Montrose Blvd., Ste. 200
Houston, Texas 77006
Phone: (888) 350-3931
Service only: service@eksm.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

(* denotes *pro hac vice* forthcoming)

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 23, 2025

Respectfully submitted,

*/s/ John P. Kristensen*

John P. Kristensen, BBO #712688
Kristensen Law Group
53 State Street, Ste. 500
Boston, MA 02109
Telephone (617) 913-0363

Leigh S. Montgomery*
Texas Bar No. 24052214
lmontgomery@eksm.com
**EKSM, LLP**
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

(* denotes *pro hac vice* forthcoming)